## Ahrns v. Ahrns.

((Decided October 16, 1914.)

### Appeal from Campbell Circuit Court.

1. Husband and Wife—When Wife Not Entitled to Alimony.—A wife is not required to be entirely blameless to entitle her to alimony; but when she has been the chief cause of the differences in the family, and has pursued a systematic course of petty annoyances, with a view to harass her husband and drive him to desperation, she is not entitled to alimony.
2. Judgment—Finding of Chancellor.—Where the proof is contradictory and the mind is left in doubt the finding of the chancellor will not be disturbed.

HORACE W. ROOT for appellant.

JOHN W. HEUVER and HOWARD M. BENTON for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

Appellant, Elizabeth Ahrns, and appellee, George Ahrns, were married on October 9, 1910. For a short time thereafter they lived with his mother, and then moved into a house of their own. They lived together until January 13, 1913, when they separated, each claiming that the other was in fault. Appellee is a carpenter with steady employment, and earning $20.00 a week.

The home in which they lived is owned by them jointly, with the right of survivorship. In buying the home she invested $636.00 of her money; he invested $744.00 of his money; and there is now a mortgage upon the property to a building and loan association for about $400.00.

According to appellant's story, while she and appellee were living together, on January 13, 1913, appellee came home in the evening, and, without any excuse, maliciously broke and destroyed the household furniture and pictures, and cut the top of a leather couch with a saw to such an extent that it had to be entirely re-covered at a cost of about $8.00. She further says he dashed two clocks from the mantel to the floor with great force, breaking and destroying them, and pulled several pictures and mirrors from the wall, stamping upon, breaking and absolutely destroying them. The appellant contends that these articles thus destroyed were her property. Appellant thereupon caused the arrest of the appellee upon a charge of disorderly conduct.

When the case was first called for trial appellee was asked if there was any chance for a reconciliation between his wife and himself, and it is claimed he said he would never live with her again; and when the prosecuting attorney suggested to appellee that he would then have to contribute or provide for his wife's support, appellee responded that he was not liable for alimony because there were no children of the marriage. However, when the case was tried some four or five days later, appellee plead guilty and agreed to pay his wife for the damage he had done to her property. In carrying out this agreement he paid her $20.00, and the further sum of $8.00 for the recovering of the couch he had destroyed.

According to appellee's story, about two weeks after the couple had gone to live with his mother, appellant accused appellee's mother of making disparaging remarks about her wedding ring, and from that time she seemed to have conceived a violent dislike towards his mother. Finding it would be impossible to continue to live in his mother's house, appellant and appellee bought the new home, as above indicated, and moved there. Appellee contends that appellant has an ungovernable temper; that she felt she had degraded herself by marrying the appellee to such an extent that she requested people to address her by her former name of Mrs. Jones; that she ordered goods from a store in her former name

of Mrs. Jones; that she cursed and abused appellee and his mother; and that her conduct throughout the trial in the police court was solely for the purpose of laying a foundation for bringing a suit for alimony.

On the day of the trial and after it had ended, appellant brought this action against the appellee for a divorce *a mensa* and for alimony, upon the ground that appellee had been guilty of such cruel and inhuman treatment as to indicate a settled aversion to her and to destroy permanently her peace and happiness. The chancellor made an allowance to appellant of $5.00 per week *pendente lite;* but upon a final trial of the case the petition was dismissed. From that judgment the wife appeals.

It is stipulated of record that the property was bought and paid for in the manner and to the extent above indicated; that the taxes thereon amount to $35.00 a year; that appellee has improved the property at an expense of about $250.00; and that the dues to the building association on the mortgage debt is $1.60 per week. Appellant has continued to occupy the house ever since the separation on January 13, 1913. The appellee is forty-two years of age; the appellant is forty-six years of age, and had theretofore been married to a Mr. Jones. Appellee has shown an excellent character for industry, sobriety and thrift. He confesses his misconduct upon the occasion of the separation, but would excuse himself upon the ground that his wife had harassed and nagged him to such an extent that his temper became uncontrollable. On the occasion mentioned the particular act at which he took offense was his wife's removal of his mother's picture from the wall, and placing the picture of one of her people in its place. She admits she removed the picture, but says it was for an entirely different purpose, and necessary in the arrangement of the household furniture.

It is unnecessary to go further into the details of these unfortunate differences. It is sufficient to say that both parties were largely at fault and that a reasonable amount of mutual self-restraint and control would have avoided the separation. Each party seemed to be too proud to admit being in fault, and one act of fancied grievance led to another. As an instance of this it is to be noted that on the day the appellant filed this action for a divorce, the appellee filed a suit against her for a sale of the property, having mistaken his legal rights

in that respect. Nevertheless, the court must deal with the case as it finds it and not as it might have been.

The law covering cases of this character is well stated in Griffin v. Griffin, 8 B. Mon., 120, where the court said:

"The law, with due consideration for the frailty of human nature, does not require the conduct of the wife to be entirely blameless, to entitle her to alimony. But when it is evident that she has been the chief cause of all the disturbances and scenes of violence in the family, and has pursued a systematic course of petty annoyances, with a view, as expressed by herself, to harass her husband and drive him to desperation, to sustain her claim to alimony under such circumstances, would be to encourage family dissensions, and a contemptuous disregard of those duties imposed by the marriage relation."

And, after reviewing the facts in that case, which were in their main features substantially similar to the facts in the case at bar, the court closed its opinion as follows:

"We are of opinion, therefore, that there was no error in the refusal of the court to decree her alimony for the purpose of a separate maintenance. She is, however, still the wife of the defendant. It is his duty to receive her and maintain her at his own house. If he refuses to do so, or if upon her return with his consent, she conducts herself with reasonable propriety, and his treatment should be unkind and cruel, in either event, she will be entitled, by invoking the aid of the chancellor, to a decree for alimony. The decree in this case forms no bar to any claim growing out of the subsequent conduct of the parties."

The doctrine above announced has been approved in many subsequent cases. See Dollins v. Dollins, 26 Ky. Law Rep., 1036, 83 S. W., 1095; Smith v. Smith, 27 Ky. Law Rep., 776, 86 S. W., 678; Klein v. Klein, 29 Ky. Law Rep., 1042, 96 S. W., 848; Garrison v. Garrison, 31 Ky. Law Rep., 1209, 104 S. W., 980; Coles v. Coles, 130 Ky., 349; Gorbrandt v. Gorbrandt, 131 Ky., 395; Green v. Green 152 Ky. 486.

In view of the contradictory proof which leaves the mind in doubt as to who was most in fault the finding of the chancellor will not be disturbed. Byasse v. Evans, 143 Ky., 415; Bond v. Bond, 150 Ky., 389.

Judgment affirmed.